UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT MICHAEL MCDONALD,

      Plaintiff,

v.                                      Case No. 3:20cv5665-MCR-HTC

ERIC ESMOND and
LISA ROY,[1]

      Defendants.
_____/

ORDER AND
REPORT and RECOMMENDATION

      Plaintiff Robert Michael McDonald, proceeding *pro se* and *in forma pauperis*,
filed a third amended complaint seeking to assert claims pursuant to 42
U.S.C. § 1983.[2] ECF Doc. 20. The matter was referred to the undersigned
Magistrate Judge for preliminary screening and report and recommendation pursuant
to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(C). Upon

---

[1] Plaintiff identifies only Eric Esmond and Lisa Roy in the third amended complaint. Thus, the
clerk will be directed to terminate all other defendants. Additionally, the clerk will be directed to
terminate all plaintiffs other than Robert McDonald.
[2] Plaintiff initially attempted to file this suit as a class action on behalf of other pretrial detainees
and named Eric Esmond and Graham Fountain as defendants. ECF Doc. 1. Subsequently, after
the Court issued an order directing Plaintiff to correct the deficiencies in his complaint, ECF Doc.
3, Plaintiff filed an amended complaint (ECF Doc. 4), which was also deficient. After a second
opportunity to amend, Plaintiff filed a second amended complaint (ECF Doc. 12); however, before
the Court could screen the second amended complaint, Plaintiff requested an opportunity to amend,
which this Court granted. ECF Doc. 14.

screening the amended complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A, the undersigned respectfully recommends this action be dismissed, as Plaintiff has failed to state a claim against either Defendant.

## I.    THE THIRD AMENDED COMPLAINT

Plaintiff, a pretrial detainee at Okaloosa County Department of Corrections ("Okaloosa Jail"), sues two (2) defendants in their individual capacities: (1) Eric Esmond, Okaloosa Jail's Chief Correctional Officer, and (2) Lisa Roy, Okaloosa Jail's Nursing Supervisor, based on alleged constitutional violations occurring at Okaloosa Jail during the coronavirus pandemic.  ECF Doc. 20 at 2.

As an initial matter, Plaintiff's third amended complaint includes twenty (20) pages of single-spaced, handwritten allegations that include various grievances he has with Okaloosa Jail and its unnamed employees, from a lack of air conditioning to irregular mask usage to the "cold, unappetizing food" being served, and, in conclusory fashion, asserts Esmond and Roy are responsible for alleged violations of Plaintiff's rights because they failed to supervise their employees.

Although such a shotgun pleading is insufficient under Federal Rule of Procedure 8, the undersigned has attempted to summarize the relevant allegations as they relate to the crux of Plaintiff's claims, which are that Defendants are liable for failing to provide him with sufficient information and protect him from Covid-19.

The following allegations from Plaintiff's third amended complaint are accepted as true for the purpose of this order.

On March 18, 2020, Okaloosa medical and jail officials began wearing face masks, albeit irregularly, but face masks were not yet provided to pretrial detainees.[3] *Id.* at 5. At this time, Okaloosa Jail employees generally failed to communicate information regarding Covid-19 protocols and safety measures to detainees, and Plaintiff submitted multiple grievances regarding this lack of communication. *Id.* Plaintiff asserts Okaloosa Jail was overcrowded, detainees received an inadequate amount of daily cleaning supplies, and Okaloosa Jail personnel circumvented standard health protocols and ignored mold and bacteria growth on the ceilings and duct work. *Id.* Plaintiff also takes issue with Okaloosa Jail's failure to consistently apply various guidelines from the Centers for Disease Control and Prevention ("CDC"), such as social distancing, mandatory use of face masks, and daily temperature screening for all inmates. *Id.* at 6.

In April 2020, Plaintiff alleges Roy held a medical briefing regarding Covid-19 for the inmates and pretrial detainees. *Id.* During the briefing, Roy discussed the importance of washing one's hands, a plan to provide cloth masks to the inmates and detainees, and the option to social distance in the day room. *Id.* Roy also provided

---

[3] Plaintiff contends officers were wearing masks irregularly, while medical staff were wearing them more consistently. ECF Doc. 20 at 5.

the pretrial detainees printed information about Covid-19 provided by "the authorities," *id.* at 7, and she instructed that all sick individuals would be quarantined, but she noted that there were not any cases of Covid-19 at Okaloosa Jail at that time, *id.* at 6. Plaintiff alleges these topics and materials were only "generalizations," and the briefing lacked significant details regarding transmission, infection, and prevention. *Id.*

On April 16, inmates and pretrial detainees were provided cloth face masks, but they were not provided any directions or instructions regarding face mask usage. *Id.* at 7. The following day, Defendant Esmond was also observed wearing a face mask, which Plaintiff contends is "evidence of his clear awareness of Covid-19" and the "immediate probable danger of exposure" for medically vulnerable individuals. *Id.*

On May 12, Roy indicated Okaloosa Jail would begin testing inmates and detainees for Covid-19. *Id.* Plaintiff also asserts that a correctional officer who had been in Plaintiff's housing unit was out for a fourteen-day (14) quarantine at this time, alarming Plaintiff and other detainees regarding the possibility of Covid-19 being present in the unit. *Id.* Roy and the employees under her supervision did not implement further precautionary measures until "scores of individuals were knowingly exposed" to the risk of contracting Covid-19. *Id.* at 8. Plaintiff alleges Esmond and the employees under his supervision continued to ignore and knowingly

disregard "key aspects of Covid-19 transmission" by failing to follow CDC guidelines, such as social distancing and using face masks. *Id.* at 9–10.

On June 7, Plaintiff was rehoused in a new section, which he alleges was overcrowded and easily accessible by inmates and detainees from an adjacent section, exposing Plaintiff and other detainees to the risk of contracting Covid-19. *Id.* at 10. Plaintiff alleges Esmond is responsible for the "low quantity of active measures undertaken," such as Esmond's failure to petition the U.S. District Court under 18 U.S.C. § 3626. *Id.*

Plaintiff asserts he was exposed to Covid-19 in July 2020 as a result of Esmond and Roy's failure to regulate Okaloosa Jail by, *inter alia*, allowing an inmate contagious with Covid-19 to slip passed a mandatory fourteen-day (14) quarantine period. *Id.* at 11. At this time, Esmond was allegedly still allowing intermingling among inmates and detainees from different housing sections, such as by having meal trays distributed by inmates from outside housing sections. *Id.* at 12. Later in July, Plaintiff began showing symptoms of Covid-19. *Id.* After complaining about his symptoms, Plaintiff was rehoused in a section that was isolated for quarantining inmates and detainees with symptoms. A few days after being quarantined, Plaintiff tested positive for Covid-19. *Id.*

Around this time, Roy held a second medical briefing, in which she allegedly lied by stating that all inmates with fevers tested negative for influenza. *Id.* at 13.

Roy also told inmates and detainees to ask and remind Okaloosa Jail officers to wear their face masks if the officers are seen without the masks. *Id.* Further, daily temperature checks began in Plaintiff's housing section, and Okaloosa Jail employees used a sprayer to disinfect individual cells and the day rooms. *Id.* at 14. Okaloosa Jail also began to (1) closely regulate the provision of razors, (2) serve meals in Styrofoam containers, (3) discontinue or disrupt laundry, shower, mail, haircut, television, and telephone services, (4) lock down individuals who were quarantining for twenty-three (23) hours per day, (5) provide quarantined individuals a different color uniform than individuals who are not quarantined, and (6) sanitize the telephones. *Id.* at 14–17.

At this time, an Okaloosa Jail physician also made medical rounds a few times per week, and quarantined individuals were provided acetaminophen and supplementary vitamins. *Id.* at 15. Plaintiff does not believe this was sufficient, and he takes issue with alleged lies and insensitive comments made by Okaloosa Jail personnel, which he asserts are indicative of the "custom of ignoring inmates and PTDs' concerns and fears" perpetuated by Esmond. *Id.* Plaintiff complains that, after a few days, daily vital checks and vitamins were no longer provided to recovering individuals, but he notes the Okaloosa Jail physician still made twice-weekly rounds. *Id.* at 16.

In late July 2020, at least twenty-two (22) individuals at Okaloosa Jail were infected with Covid-19, which Plaintiff asserts is a result of Esmond and Roy's failure to train and supervise their employees. *Id.* Plaintiff also takes issue with the comingling of individuals who are recovering from Covid-19 and those who are newly infected with the virus. *Id.* at 17.

Plaintiff alleges from September through the time of filing the third amended complaint, Okaloosa Jail employees continued to haphazardly and intermittently wear face masks despite requests from detainees that they wear their masks. *Id.* at 17–18. Plaintiff also complains about an inmate who tested positive for Covid-19 in October 2020 but remained in the same section as Plaintiff for about two weeks before testing negative and being cleared for travel to an outside facility, as well as the haphazard testing of Okaloosa Jail employees. *Id.*

Based on these events, Plaintiff alleges in Count I, titled "Denial of Adequate Medical Care," that Roy and Esmond were deliberately indifferent to his medical needs regarding his contraction of Covid-19 and subsequent treatment. Namely, Plaintiff asserts he may need medical treatment based on his lingering, post-Covid-19 symptoms, but Okaloosa Jail "remains obtusely unwilling to acknowledge and attend to such 'collateral damage' resultant bodily conditions" by refusing to provide "adequate follow-up medical services" for Plaintiff's conditions. *Id.* at 19–20. Although Plaintiff asserts that "it is not yet known if these clearly observable

and diagnosable conditions will require or can be improved with appropriate medical treatment," he contends Okaloosa Jail is placing him at substantial risk of future injury. *Id.* at 20.

In Count II, Plaintiff alleges Defendants failed to protect him from Covid-19 due to their failure to supervise their subordinates, resulting in numerous "systemic institutional deficiencies." *Id.* Plaintiff asserts Esmond and Roy "recklessly failed to act" to employ and adopt policies and train their employees to reduce the spread of Covid-19. *Id.* at 21. Plaintiff acknowledges, however, that he cannot show a causal connection indicating the "supervisory direction" of Esmond and Roy. *Id.* at 21. Nevertheless, he asserts that Esmond and Roy failed to direct their subordinates to adopt policies that would protect his health and well-being. *Id.* He further asserts this failure to supervise, which "allowed subordinates to . . . cut corners so as merely to preserve money, time and energy," relates to cost concerns. *Id.* at 22.

For relief, Plaintiff requests a "declaratory judgment from the Court acknowledging constitutional harm done to him by the Defendants" and compensatory damages. *Id.* at 25.

## II.    LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief against governmental employees and is also proceeding *pro se*, the Court is required to review his complaint, identify cognizable claims, and dismiss the complaint, or any portion thereof, if it "(1) is

frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."   28 U.S.C. §§ 1915(e)(2); 1915A(b).

Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  *See Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997).  To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To state a plausible claim for relief, plaintiffs must go beyond merely pleading the sheer possibility of unlawful activity by a defendant; plaintiffs must offer factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* Additionally, because Plaintiff is proceeding *pro se*, the undersigned will liberally construe his allegations.  *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

## III.   DISCUSSION

Plaintiff fails to state a claim upon which relief can be granted because he has not alleged facts sufficient to establish a claim for failure to protect or deliberate indifference to a medical need.  Additionally, Plaintiff has failed to allege facts sufficient to show these Defendants are liable under a theory of supervisory liability.

Also, because Plaintiff has had three opportunities to more carefully craft his complaint to state a claim, the undersigned recommends this action be dismissed without a fourth opportunity to amend.

### A.    Failure to Protect

Plaintiff alleges Defendants failed to protect him from COVID-19.  In order to state such a claim, Plaintiff must allege facts sufficient to satisfy two components: one objective and the other subjective.  *See Farmer v. Brennan*, 511 U.S. 825, 846 (1994).

First, to satisfy the "objective component," Plaintiff must set forth facts sufficient to show "an objectively intolerable risk of harm."  *Id.*  He must show the challenged conditions were "extreme" and presented an "'unreasonable risk of serious damage to his future health' or safety."  *Chandler v. Crosby*, 379 F.3d 1278, 1290 (11th Cir. 2004) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).  Given the serious nature of Covid-19, Plaintiff has satisfied this component.  *See Swain v. Junior*, 961 F.2d 1276, 1285 (11th Cir. 2020).

Second, to satisfy the "subjective component," Plaintiff must allege facts to show the prison official acted with deliberate indifference.  As the Court previously instructed Plaintiff in its prior amend order (ECF Doc. 7 at 12), a showing of deliberate indifference requires Plaintiff make the following three sub-showings as to each Defendant: (1) subjective knowledge of a serious risk of harm; (2) disregard

of that risk; (3) by conduct that is more than mere negligence." *Swain*, 961 F.2d at 1285.

As the Eleventh Circuit recently stated in *Swain*, which involves a claim of deliberate indifference to Covid-19, "[a]s applied in the prison context, the deliberate indifference standard sets an appropriately high bar. A plaintiff must prove that the defendant acted with 'a sufficiently culpable state of mind.'" *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Deliberate indifference requires the defendant to have a subjective "state of mind more blameworthy than negligence," *Farmer*, 511 U.S. at 835, closer to criminal recklessness, *id.* at 839–40.

As in *Swain*, it is this second component of a deliberate indifference claim that Plaintiff does not meet. Namely, Plaintiff has not alleged facts sufficient to show either Defendant, or for that matter, any Okaloosa Jail employees, acted with a culpable state of mind. To the contrary, Plaintiff admits Okaloosa Jail implemented, *inter alia*, the following measures: (1) provided face masks for employees and inmates, (2) conducted at least two medical briefings regarding Covid-19, (3) provided printed information about Covid-19 to inmates, (4) quarantined infected individuals, (5) provided Covid-19 tests, (6) served meals in disposable trays, (7) conducted daily temperature checks, (8) sterilized cells and day rooms with disinfectant, (9) conducted medical rounds once or twice per week, (10)

provided Tylenol, supplementary vitamins, and Zinc, and (11) provided different colored uniforms for quarantined individuals.  ECF Doc. 20.

Although Plaintiff alleges various shortcomings, such as a lack of consistent social distancing and a failure by officers to consistently wear face masks, such allegations, at best, only show that Okaloosa Jail employees may have been negligent in failing to consistently apply the established procedures.  As Plaintiff acknowledges in his third amended complaint, this is not a situation where no procedures were in place at Okaloosa Jail to prevent Covid-19; rather, it is simply that the procedures may not have been consistently followed or were negligently applied.  Negligent conduct, however, does not rise to the level of a constitutional violation.

Moreover, the fact that Okaloosa Jail was not able to prevent Plaintiff from contracting Covid-19 does not necessarily mean that any Okaloosa Jail official, including Defendants, violated the constitution.  *See Swain*, 961 F.3d at 1287 (citing *Wilson v. Seiter*, 501 U.S. 294, 303 (1991) and *Wilson v. Williams*, No. 20-3447, 961 F.3d 829, 842–43 (6th Cir. June 9, 2020) (rejecting the contention that "the [Bureau of Prisons] was deliberately indifferent to petitioners' health and safety because [its] actions have been ineffective at preventing the spread of Covid-19")).  A prison "official may escape liability for known risks 'if [he] responded reasonably to the risk, even if the harm ultimately was not averted,'" *Chandler*, 379 F.3d at 129, such

as where some precautions are put in place. Here, based on Plaintiff's own allegations, it is clear that Okaloosa Jail reacted reasonably to the risk of Covid-19 by putting in place many precautions. Plaintiff has thus failed to allege a constitutional violation arising out of the conditions of his confinement.

## B.    Denial of "Adequate" Medical Care

Plaintiff also alleges Defendants were deliberately indifferent to a medical need. Similar to a failure to protect claim, to state a claim for deliberate indifference to a serious medical need, Plaintiff must allege facts sufficient to satisfy both an objective and a subjective component. *See Farmer*, 511 U.S. at 846. The objective element is met by alleging a risk of serious medical harm, which the undersigned presumes is satisfied here because Plaintiff contracted Covid-19. ECF Doc. 20 at 11.

To satisfy the subjective element, Plaintiff must show Defendants acted with deliberate indifference to that risk. *Chandler*, 379 F.3d at 1289. As mentioned above, this requires Plaintiff to sufficiently allege subjective knowledge of a serious risk of harm and disregard of that risk by conduct that is more than mere negligence. *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (quotations omitted).

Importantly, allegations of negligence and medical malpractice do not state a plausible claim for relief under section 1983. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). Instead, establishing deliberate indifference requires Plaintiff to

show "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Id.* In other words, Defendants' response to Plaintiff's serious medical need must be "poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligen[ce] in diagnosi[s] or treat[ment], or even [m]edical malpractice." *Id.* at 1258 (citing *Estelle*, 429 U.S. at 105–06).

Here, aside from the conclusory allegation that Defendant Roy's "repeated lies and lackadaisical attitude toward comprehensive care" caused a general delay and lack of care to become "systemic," ECF Doc. 20 at 19, Plaintiff makes no allegations against either Defendant regarding alleged deliberate indifference to his medical needs. Indeed, Plaintiff does not allege either Defendant had any interaction with him whatsoever in relation to his medical care. Instead, Plaintiff only alleges "medical staff, "nursing staff," "OCDOC officials," and "Dr. Delgado" (who is not a defendant in this action) denied him adequate medical care after he tested positive for Covid-19. *Id.* Accordingly, Plaintiff fails to allege either Defendant Roy or Defendant Esmond was even aware Plaintiff had contracted Covid-19, and he thus fails to allege either Defendant disregarded a risk of serious harm to Plaintiff by conduct that is more than mere negligence.

Moreover, Plaintiff has not alleged facts sufficient to show that *any* Jail officials—let alone Defendants Roy and Esmond—acted with deliberate

indifference because this is not a case in which the Jail employees ignored Plaintiff's serious medical need or failed to provide treatment. As mentioned above, Plaintiff was provided, *inter alia*, daily temperature checks, Tylenol and vitamins, and routine visits with a doctor and nursing staff, ECF Doc. 20 at 19. Rather, this case is simply one in which Plaintiff believes he should have received different treatment—namely, that he should have been given (1) more time and attention from medical staff, (2) a less "punitive" setting for quarantine, and (3) better follow-up care following his contraction of Covid-19, even though Plaintiff *admits* "it is not yet known if these clearly observable and diagnosable conditions will require or can be improved with appropriate medical treatment." ECF Doc. 20.

Thus, Plaintiff's complaints, at most, appear to be a mere difference in medical opinion between Okaloosa Jail's medical staff and Plaintiff, as to the latter's course of treatment, which does not support a claim of deliberate indifference. *See Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)) ("[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment.").

## C.    Supervisor Liability

Throughout the third amended complaint, Plaintiff generally alleges Defendants Esmond and Roy are liable based on their shortcoming as supervisors,

including their failure to train employees to follow policies that protect Plaintiff's health. Supervisory officials, however, cannot be liable under section 1983 for the unconstitutional acts of their subordinates "on the basis of respondent superior or vicarious liability." *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994). Instead, supervisory liability may occur "when either (1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged violation." *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006).

Here, as addressed above, the undersigned finds Plaintiff has failed to allege facts sufficient to establish a constitutional violation. Thus, as a matter of law, Defendants Esmond and Roy cannot be held liable based on their supervisory capacity. *Gish v. Thomas*, 516 F.3d 952, 955 (11th Cir. 2008) ("There can be no supervisory liability . . . if there was no underlying constitutional violation . . . .").

Moreover, even if Plaintiff had stated a claim for a constitutional violation, Plaintiff must allege facts sufficient to establish a causal connection between each Defendant and the alleged violation in order to state a claim of supervisory liability against the Defendants, as neither Defendant was personally involved in the alleged (nonexistent) constitutional violation. As Plaintiff himself concedes, his allegations fail in this regard: "Plaintiff cannot show a 'causal connection' indicating that

supervisory direction on the part of both Defendants resulted in their subordinates' unlawful activity regarding constitutional deprivations . . . ."  ECF Doc. 20 at 21.

A review of Plaintiff's third amended complaint confirms Plaintiff's concession that his allegations are devoid of a causal connection.  Such a causal connection can be established by alleging (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so"; (2) "the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights"; or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.*  The standard by which a supervisor "is held liable in [his] individual capacity is extremely rigorous." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).

Although Plaintiff uses buzz words and phrases, such as "custom," "systemic," "failure to train," and "cost concerns," these mere labels and conclusions, without any supporting facts, are insufficient to allege the necessary causal connection. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (noting courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Ashcroft*, 556 U.S. at 680–81 (explaining conclusory allegations are not entitled to a presumption of truth).  Plaintiff's allegations of wrongdoing against the Defendants in their

supervisory roles are nothing "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.

For example, Plaintiff alleges "Supervisory staff members' [have a] widespread custom of near complete lack of proactive preparation for such exigencies [such as Covid-19]," and Defendants' "failure to directly and properly supervise staff relat[es] to overriding cost concerns." ECF Doc. 20. While the quoted language comes from just a few paragraphs of the third amended complaint, the remainder of the pleading is replete with similar general and conclusory allegations.

Nowhere in the complaint, however, does Plaintiff allege "any facts to support such allegation[s]." *Milledge v. Jones*, No. 4:15CV577-WS/CAS, 2016 WL 11680219, at *2 (N.D. Fla. Nov. 18, 2016) (quoting *Gross v. White*, 430 F. App'x 527, 531 (11th Cir. 2009)). Instead, "Plaintiff simply parrots the language of the cases which hold that supervisory liability may arise if the supervisor 'instituted a custom or policy which resulted in a violation of the plaintiff's constitutional rights.'" *Id.* Plaintiff does not identify when any particular policy or custom was put in place, who put it in place, or identify anyone else whose rights have been violated as a result of the policy or custom.

Moreover, to the extent Plaintiff alleges the supervisory defendants were on notice and aware of the need to correct a constitutional deprivation, such an

allegation is insufficient to establish the extent of the supervisors' knowledge or the level of their involvement. *Id.* (quoting *Tittle v. Jefferson Cty. Comm'n*, 10 F.3d 1535, 1542 (11th Cir. 1994)) ("Knowledge imputed to the supervisor 'must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights.'"). Plaintiff does not allege that these supervisory officials personally witnessed any alleged constitutional deprivation, or that they knew such deprivations were frequently occurring.

Plaintiff also fails to allege either Defendant is liable for failing to train their employees. A supervisor can be held liable for failing to train his or her employees, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Thus, a plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had "actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights," and that armed with that knowledge the supervisor chose to retain that training program. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). As discussed above, this allegation, too, is insufficient to state a claim, as Plaintiff has not sufficiently alleged (1) an underlying constitutional deprivation, and (2) Defendants' actual or constructive notice of such a deprivation.

**D.     The *Colorado River* Abstention Doctrine**

In section IV of Plaintiff's third amended complaint, titled "PREVIOUS LAWSUITS," Plaintiff discloses a civil state action he filed dealing with the same facts or issues and the same defendants as the instant case.[4]  ECF Doc. 20 at 3.  To the extent Plaintiff's pending state case may involve the same facts or issues before this Court, this action is subject to dismissal under the *Colorado River*[5] abstention doctrine.  "The *Colorado River* doctrine . . . authorizes a federal 'district court to dismiss or stay an action when there is an ongoing parallel action in state court.'" *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004) (quoting *LaDuke v. Burlington Northern Railroad Co.*, 879 F.2d 1556, 1558 (7th Cir. 1989)).

**IV.   CONCLUSION**

For the reasons set forth above, the undersigned recommends Plaintiff's claims be dismissed for failure to state a claim *sua sponte*, prior to service, and without leave to amend.  Despite this Court's instructions in its prior amend order (ECF Doc. 7), Plaintiff again fails to state a claim against either Defendant, as he has not sufficiently alleged any constitutional deprivation.  Additionally, even if he had alleged such a deprivation, he still fails to sufficiently allege either Defendant

---

[4] Plaintiff's related state case could not be found.
[5] *Colorado River Water Conservation Distr. v. U.S.*, 424 U.S. 800 (1976).

would be liable directly or in their supervisory capacities. As such, providing Plaintiff another opportunity to amend would be futile. *See, e.g.*, *Gonzalez v. Citicorp Credit Srvcs., Inc.*, 2015 WL 13776794 (S.D. Fla. May 18, 2015), *adopting report and recommendation*, 2015 WL 13776795 (June 22, 2015) ("[An] early evaluation of the potential merits of a *pro se* litigant's claim is very important because initial screening by the court can eliminate patently frivolous actions.")

Also, because Plaintiff will be afforded an opportunity to file an objection to this Report and Recommendation, a *sua sponte* dismissal is appropriate. *See Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted) ("[A] district court can only dismiss an action on its own motion as long as the procedure employed is fair. . . . To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond."); *Anderson v. Dunbar Armored, Inc.*, 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting that R & R served as notice that claims would be *sua sponte* dismissed).

Accordingly, it is ORDERED:

The clerk is directed to terminate Graham Fountain as a defendant and all plaintiffs other than Robert McDonald. The clerk is further directed to add Lisa Roy as a named defendant.

It is also respectfully RECOMMENDED:

1.     Plaintiff's third amended complaint (ECF Doc. 20) be dismissed under

28 U.S.C. §§ 1915(e)(2) and 1915A.

2.     The clerk be directed to close the file.


Done in Pensacola, Florida, this 16th day of February, 2021.

_/s/ Hope Thai Cannon_____
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  _See_ 11th Cir. Rule 3-1; 28 U.S.C. § 636.**